ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO PUERTA DEL PARQUE<br><br>Recurrido<br><br>v.<br><br>HACIENDA SAN JOSÉ HOMEOWNERS ASSOCIATION, INC. Y OTROS<br><br>Peticionario | TA2025CE00209 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Número: CG2021CV02406<br><br>Sobre:<br><br>Cobro de dinero-ordinario y otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de septiembre de 2025.

Comparece la Hacienda San José Homeowners Association Inc. (HSJHOA o peticionaria) y solicita que revoquemos la *Resolución* que el Tribunal de Primera Instancia, Sala de Caguas (TPI o foro primario) notificó, el 21 de mayo de 2025, la cual fue objeto de reconsideración. En esta, el foro primario denegó una moción dispositiva promovida por la HSJHOA.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y confirmamos el dictamen recurrido.

**I.**

El 22 de septiembre de 2021, el Consejo de Titulares del Condominio Puerta del Parque (Consejo o recurrido) instó la presente causa en contra de la HSJHOA. Según las alegaciones de la *Demanda*,[1] la HSJHOA presuntamente incumplió con ciertas

---

[1] Surgen de la *Demanda* las siguientes causas de acción: primera-enriquecimiento injusto; segunda -incumplimiento de obligaciones extracontractuales y contractuales y sentencia declaratoria; tercera-nulidad de disposiciones reglamentarias; cuarta-interdicto permanente; quinta-cobro de dinero; sexta-nulidad de la composición de HSJHOA y de la Junta de Directores de HSJHOA, trato desigual e inequitativo; séptima-temeridad y honorarios.

obligaciones relacionadas, entre otras, al mantenimiento del *tele-entry,* áreas y jardín de la entrada principal, a pesar de que los titulares del Condominio Puerta del Parque (Condominio) sufragaron las cuotas de mantenimiento correspondientes.

Contestada la demanda, la HSJHOA instó una moción de desestimación, fundamentada en la presunta falta de legitimación activa del Consejo para instar una reclamación a nombre de los titulares del Condominio.[2] Lo antes, por el Consejo no ser titular de una unidad de apartamento del Condominio, ni pagar cuotas de mantenimiento, entre otros. La HSJHOA invocó, además, la doctrina de falta de parte indispensable ante la omisión del Consejo de incluir como demandados a todos los titulares de las demás secciones del complejo residencial, a pesar de haber solicitado la nulidad de ciertas cláusulas de la Escritura Matriz del complejo de viviendas que pueden afectar sus derechos.

Evaluadas las posturas de ambas partes, el foro primario acogió la moción de desestimación de la HSJHOA como un petitorio sumario y, tal cual solicitó el Consejo, autorizó cierto descubrimiento de prueba, a partir de lo cual, el Consejo habría de oponerse al petitorio de la HSJHOA.[3] Cumplido lo anterior, el Consejo acreditó su oposición, en la cual, propuso nueve (9) hechos no controvertidos e identificó cuatro (4) hechos en controversia.[4] Aseguró tener legitimación activa para incoar la presente causa.

---

[2] Junto a su solicitud, la HSJ incluyó los siguientes documentos: Anejo 1-Demanda; Anejo 2-Escritura de Propiedad Horizontal Folios; Anejo 3-Escritura Matriz de HSJHOA; Anejo 4-Registro de la Propiedad de Caguas, Sección I, Finca 21108.

[3] Tras solicitar sin éxito la reconsideración del referido dictamen interlocutorio, la HSJ acudió en revisión ante esta Curia (Recurso Núm. KLCE202400248), recurso en el cual denegamos la expedición del auto, mediante una *Resolución* emitida el 19 de marzo de 2024.

[4] El Consejo anejó a su escrito en oposición lo siguiente: Anejo A-Carta del 4 de septiembre de 2013 suscrita por Ernesto Vissepó; Anejo B-Carta del 30 de septiembre de 2019 suscrita por Yamil M. Caro Pérez, Presidente de la Junta de HSJ; Anejo C-Carta del 27 de octubre de 2019 dirigida a los miembros de la Junta de Directores de HSJ, suscrita por la Sra. Petra Milagros Santiago, Presidenta de Puerta del Parque; Anejo D-Tabla de producción de documentos indicando que no existe minuta de reunión; Anejo E-Convocatoria a asamblea de Puerta del Parque a celebrarse el 14 de julio de 2021; Anejo F-Acta de asamblea de Puerta del Parque.

Además, expuso que la HSJHOA goza de capacidad suficiente para atender y defender los reclamos a nombre de los titulares del complejo residencial.

Sometida la moción dispositiva de la HSJHOA y su correspondiente oposición, el foro primario notificó la *Resolución* impugnada en donde consignó como incontrovertidos los siguientes veinte (20) hechos:

1. HSJ es una corporación doméstica sin fines de lucro, con número de registro corporativo 35453, con capacidad para demandar y ser demandada.
2. El Condominio Puerta del Parque es un condominio residencial sometido al régimen de propiedad horizontal de conformidad a las disposiciones de la Ley de Condominios de Puerto Rico y por virtud de la Escritura #46 (Deed Submitting Property to the Horizontal Property Regime Puerta del Parque Condominium), otorgada en Guaynabo, Puerto Rico, ante la Notario Estela I. Valles Acosta, el 25 de octubre de 2006; debidamente inscrita en el Registro de la Propiedad de Caguas, Sección 1, al Folio 192, Tomo 1732, Finca #59987, Inscripción 2da y última.
3. La finca donde ubica el Condominio Puerta del Parque dentro del complejo de la Hacienda San José y, por tal motivo, los apartamentos individuales están gravados con la servidumbre en equidad y muy particularmente en el Folio 3 de la Escritura Constitutiva de Propiedad Horizontal del Condominio Puerta del Parque, se dispone en cuanto a la obligación de pago de los dueños de los apartamentos del condominio: "The restrictions impose dues on the owners of the properties which compromise Hacienda San José Development and these dues are guaranteed by the properties."
4. El Condominio Puerta del Parque es un complejo de ochenta y ocho (88) apartamentos residenciales ubicado dentro del completo maestro Hacienda San José en Caguas, Puerto Rico.
5. El complejo maestro HSJ, está compuesto por varias secciones residenciales de urbanizaciones y el único Condominio, cuyo Consejo de Titulares es la parte aquí demandante.
6. HSJ, en una corporación inscrita en el Departamento de Estado, a la cual le aplican las disposiciones de la Ley de Corporaciones de Puerto Rico, así como las disposiciones de la Escritura #335 titulada Escritura Estableciendo Asociación Matriz Declaración de Convenios y Restricciones Desarrollo Hacienda San José, otorgada en Guaynabo, Puerto Rico, el 25 de septiembre de 2000, ante la Notaria Estela I. Valles Acosta. De igual forma, HSJ tiene aprobado varios reglamentos, entre estos By-laws generales de HSJ del 2018, según enmendados.
7. Además de Puerta del Parque, las restantes secciones que comprenden HSJ son: Asomante, Cautiva, La Estancia, Las Nubes, Sanjuanera, Sureña y Villa Caribe. Estas secciones son urbanizaciones compuestas de casas residenciales con su propio sistema de tele-entry.
8. Distinto a los titulares de las secciones residenciales Asomante, Cautiva, la Estancia, Las Nubes, Sanjuanera, Sureña y Villa Caribe, los titulares de Puerta del Parque

pagan dos (2) cuotas de mantenimiento, una para Puerta del Parque y otra cuota separada para HSJ.

9. En la Escritura Matriz de HSJ se dispone y establece en la Sección Sexta de la parte Expositiva que, HSJ es una corporación sin fines de lucro, cuyo propósito es ejercer las funciones establecidas en la mencionada Escritura.

10. En el mismo párrafo expositivo Sexta, antes mencionado, se establece que las Propiedades y adiciones hechas de acuerdo con el Artículo II de la escritura Matriz, son y serán transferidas, vendidas y cedidas y ocupadas sujeto a los convenios, restricciones, servidumbres, cargas y gravámenes que se establecen más adelante en la escritura matriz. Estas cargas están inscritas al vuelto del folio 151 del tomo 1520 de Caguas, finca 21,108, Registro de la Propiedad de Caguas Sección I y establecen gravámenes reales a las fincas y los titulares.

11. La Escritura Matriz de HSJ define Asociación como que se refiere a Hacienda San José Homeowners Association, Inc.

12. La Escritura Matriz de HSJ define Propiedades como aquellas existentes y adiciones sujetas a esta declaración, refiriéndose a la declaración en la Escritura Matriz o cualquier otra declaración suplementaria bajo las disposiciones del Artículo II de la escritura Matriz.

13. La Escritura Matriz define Propiedades Comunales Generales como aquellas áreas de terreno y mejoras, si alguna, mostradas en cualquier plano inscrito de subdivisión de propiedades y expresamente designado por LEVITT como facilidades comunales y facilidades regionales para uso común y disfrute de todos los dueños de las Propiedades.

14. La Escritura Matriz define Unidades de Vivienda como cualquier parte de un edificio situado en las Propiedades, designado para el uso y ocupación como residencia de una familia.

15. La Escritura Matriz define Dueño o Miembro como el dueño en pleno dominio de cualquier solar o unidad de vivienda situada en las Propiedades, excluyendo la hipoteca que grave la propiedad.

16. En el Artículo II de la Escritura Matriz se establecen como propiedades sujetas a la declaración como las propiedades existentes y las adiciones a las propiedades existentes, excluyendo la hipoteca.

17. El Artículo III de la Escritura Matriz brinda el derecho al voto de cada miembro clase A (los adquirentes por escritura de las propiedades) dentro de la escritura organizativa de la Asociación de la Hacienda San José.

18. En la sección 1 del Artículo IV de la Escritura Matriz se dispone que todo miembro, sujeto las provisiones de la Sección 3, tendrá derecho a una servidumbre de goce sobre las Propiedades Comunales Generales y dicha servidumbre será perteneciente y pasará con el título de cada solar o unidad de vivienda.

19. Bajo la Escritura Matriz de la HSJ, la Asociación tiene la facultad para poseer, operar y mantener las Propiedades Comunales Generales, y los equipos y accesorios para su conservación y mejoras.

20. La Ley de Condominios, 31 LPRA sec. 19219(s), por su parte regula lo relacionado a los Condominios ubicados dentro de desarrollos de urbanizaciones y/o mixtas. Al respecto, el Artículo 20 dispone lo siguiente:

"Los inmuebles sometidos a esta Ley también podrán usar y disfrutar de las áreas e instalaciones pertenecientes a otros condominios, urbanizaciones o desarrollos residenciales, comerciales o mixtos, o de otro tipo, tales como áreas de entrada, salida y acceso vehicular o

peatonal, instalaciones de índole recreativa, educativa, comercial, o cualquier otra área o instalación, según así se disponga en las escrituras matrices, de convenios maestros, de servidumbres en equidad, o en otros documentos constitutivos de restricciones, condiciones o servidumbres, que afecten o se otorguen en relación con dichas áreas o instalaciones, o sea así aprobado por las entidades públicas y/o cuasi-públicas con jurisdicción. Para el uso, operación, mantenimiento y demás aspectos relacionados con estas áreas y/o instalaciones compartidas, aplicarán las disposiciones provistas para ello en las escrituras matrices, de convenios maestros, de servidumbres en equidad, y/o en los otros documentos constitutivos de restricciones y/o condiciones y/o servidumbres, que afecten y/o se otorguen en relación con dichas áreas y/o instalaciones de conformidad con los permisos y/o las resoluciones que se emitan por las entidades públicas y/o cuasipúblicas con jurisdicción."

En su dictamen, el TPI también identificó siete (7) hechos controvertidos, a saber:

1. Conversaciones previo al acuerdo y extensión del acuerdo en sí sobre el pago y aportaciones por parte de HSJ para el mantenimiento de áreas verdes y ciertos servicios del Condominio.
2. Participantes de las referidas conversaciones.
3. Si los alegados acuerdos fueron avalados por los titulares de HSJ o solo por su Junta de Directores.
4. ¿A nombre de quién fueron emitidos los pagos que llegaron a efectuarse a favor del Condominio?
5. ¿Qué aconteció en la reunión de 26 de septiembre de 2019?
6. ¿Qué motivó a que, en dicha reunión, se revocara el acuerdo por parte de HSJ?
7. ¿Por qué razón tomaron tal determinación a pesar de que, en dicho momento, no había un representante del Consejo de Titulares?

De conformidad, el TPI se negó a resolver sumariamente la presente causa y ordenó la celebración de un juicio en su fondo. Además, adjudicó a favor del Consejo los planteamientos sobre falta de parte indispensable y falta de legitimación activa que invocó la HSJHOA.

Inconforme, la HSJHOA acude ante esta Curia mediante el presente recurso de *certiorari* y le imputa al foro primario lo siguiente:

Erró el TPI al denegar nuestra solicitud de desestimación por el fundamento de falta de legitimación activa bajo la Ley de Condominios cuando esta ley dispone expresamente en su Artículo 20 que el uso, operación, mantenimiento y demás aspectos relacionados con estas áreas y/o instalaciones compartidas, aplicarán las disposiciones provistas para ello

en las escrituras matrices, de convenios maestros, de servidumbres en equidad, y/o en los otros documentos constitutivos de restricciones y/o condiciones y/o servidumbres.

Erró el TPI al no resolver la solicitud de desestimación por falta de parte indispensable cuando dicho asunto solo requiere examinar la causa de acción sexta de la demanda, mediante la cual se solicita anular disposiciones específicas de la Escritura Matriz, lo cual afectaría derechos reales inscritos y publicados registralmente en los que confiaron y confían todos los titulares presentes y potenciales de la Hacienda San José, asunto que bajo la regla 10.2(6) es privilegiado y requiere atención una vez presentado el asunto, sin que se permita postergar su resolución como resuelve el dictamen recurrido.

Erró el TPI al posponer la determinación sobre la desestimación de la causa de acción número 6 de la demanda utilizando para ello el análisis de la Regla 10.2(5) de Procedimiento Civil sobre dejar de exponer una reclamación que justifique la concesión de un remedio al evaluar las alegaciones de la demanda de manera favorecedora a la parte demandante-recurrida sin haber realizado el análisis de plausibilidad que requiere la requiere la doctrina de interpretación de la Regla. Además, el TP[I] no realizó el análisis ni resolvió la falta de parte indispensable bajo la Regla 10.2 aplicable al posponer este asunto que ya está maduro. (Énfasis suprimido.)

En respuesta, el Consejo se opone al presente recurso mediante un *Memorando en oposición a expedición de auto de certiorari,* en el cual, discute los fundamentos para no intervenir con el dictamen impugnado y expone las razones que justifican la determinación del foro primario.

Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al.,* supra. A diferencia del recurso de apelación, el tribunal revisor tiene la

facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). La citada regla dispone:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Íd.* A tenor de la Regla 11(C) de nuestro Reglamento, *supra,* cuando la citada Regla 52.1 impida expedir el auto de *certiorari,* procede denegar su expedición.

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria está codificado en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros,* 2025 TSPR 78, resuelto el 5 de agosto de 2025. Cabe señalar que, esta herramienta permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe duda sobre los hechos esenciales y se cuenta con la evidencia necesaria, de manera que, solo resta aplicar el derecho. *Consejo de Titulares del Condominio*

*Millennium v. Rocca Development Corp., et als.*, 2025 TSPR 6, resuelto el 15 de enero de 2025. Este cauce sumario -invocable tanto por la parte reclamante como por quien se defiende de una reclamación- resulta beneficioso para el tribunal y para las partes, pues agiliza el proceso judicial mientras, simultáneamente, provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025.

Como se sabe, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et als.*, supra. De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* 2025 TSPR 1, resuelto el 7 de enero de 2025.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las

razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Véase, además, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Además, el promovente de una solicitud de sentencia sumaria ha de acompañar su petitorio con prueba de la cual surja preponderantemente la ausencia de controversias sobre los hechos medulares del caso. *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023). Es un hecho medular el que puede afectar el resultado de la reclamación, conforme al derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Cabe destacar que, la parte que desafía una moción de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020). Por el contrario, la Regla 36.3(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(c), obliga a quien se opone a que se declare con lugar esta solicitud a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *León Torres v. Rivera Lebrón,* supra. A esos efectos, deberá sustentar con evidencia sustancial los hechos materiales que entiende están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra.

Por ello, en la oposición a una solicitud de sentencia sumaria, el promovido debe detallar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales

que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [...] el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en la misma posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro,* supra. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Acevedo y otros v. Depto Hacienda y otros,* 212 DPR 335, 352 (2023).

**C. La justiciabilidad y la legitimación activa**

La doctrina de la justiciabilidad limita la intervención de los tribunales a resolver controversias reales y definidas que afectan las

relaciones jurídicas de partes antagónicas u opuestas. *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021). Es decir, que el principio de justiciabilidad requiere que exista un caso o controversia real para que los tribunales puedan ejercer válidamente el Poder Judicial. En ese sentido, nuestra intervención "tendrá lugar solo si existe una controversia genuina entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas". *Hernández, Santa v. Srio. De Hacienda*, 208 DPR 727, 738 (2022). Por tanto, una controversia no se considera justiciable cuando:

> 1) se procura resolver una cuestión política;
> **2) una de las partes carece de legitimación activa;**
> 3) hechos posteriores al comienzo del pleito han tornado la controversia en académica;
> 4) las partes están tratando de obtener una opinión consultiva; o
> 5) se intenta promover un pleito que no está maduro. *Super Asphalt v. AFI y otro*, supra.

Así, pues, los tribunales debemos evaluar estos requisitos de origen constitucional antes de considerar y pronunciarnos sobre los méritos de una controversia. *Íd.* Como elemento esencial para la adjudicación de los méritos de una controversia, el principio de justiciabilidad impone a los tribunales el deber de evaluar si la parte que acude ante nuestra consideración posee legitimación activa. *Hernández, Santa v. Srio. De Hacienda*, supra, en las págs. 738-739. El Tribunal Supremo de Puerto Rico ha definido la legitimación activa como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017).

Conforme a la doctrina de justiciabilidad, la parte que solicita un remedio judicial debe demostrar lo siguiente:

(1) ha sufrido un daño claro y palpable;

(2) el daño es real, inmediato y preciso, no abstracto o hipotético;

(3) existe una conexión entre el daño y la causa de acción ejercitada, y

(4) la causa de acción surge al palio de la Constitución. *Hernández, Santa v. Srio. De Hacienda*, supra, en las pág. 739, citando a *Bhatia Gautier v. Gobernador*, supra.[5]

## D. Parte indispensable

La Regla 16.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1 establece quiénes son parte indispensable, a saber: "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia [...]" *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros,* 2024 TSPR 112, resuelto el 21 de octubre de 2024. Entiéndase que, es indispensable aquella parte a quien se le violentaría su debido proceso de ley si se adjudica la controversia sin su presencia. *Pérez Ríos et al. v. CPE,* 213 DPR 203 (2023); *Rivera Marrero v. Santiago Martínez,* 203 DPR 462 (2019).

Como se sabe, el propósito de la Regla 16.1, *supra,* es proteger a las personas, naturales o jurídicas, que no formen parte de un pleito, de los efectos que acarrea la sentencia dictada. *Pérez Ríos et al. v. CPE,* supra. Al mismo tiempo, evita la multiplicidad de pleitos. *Íd.*[6] Sobre el particular, nuestro más Alto Foro ha resuelto que, la falta de parte indispensable constituye una defensa irrenunciable, susceptible de invocarse en cualquier etapa de los procedimientos. *Inmobiliaria Baleares, LLC y otros v. Benabe González y otros,* supra. Lo anterior, debido a que, el efecto de no traer a una parte indispensable redunda en una violación a su debido proceso de ley. *Íd.* Por tanto, la ausencia de parte indispensable es un fundamento para dejar sin efecto una sentencia por nulidad. *Íd.* Ello, con el efecto de dejar sin jurisdicción al

---

[5] Véase, además, *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 943 (2011).
[6] Véase, además, *FCPR v. ELA et al.,* 211 DPR 521 (2023).

tribunal para resolver la controversia en ausencia de una parte indispensable. *Pérez Ríos et al. v. CPE,* supra.

**III.**

En su recurso, y como primer señalamiento de error, la peticionaria invoca la doctrina de la legitimación activa como fundamento para sustentar que procede la desestimación de esta causa. Discute que, las disposiciones reglamentarias cuya nulidad pretende el Consejo están inscritas en el Registro de la Propiedad, lo cual las hace exigibles y efectivas frente a todo titular de dicho desarrollo residencial, y su alteración por la vía judicial menoscabaría los intereses de los titulares. Agrega que, el Consejo no tiene legitimación activa para impugnar la modificación de la cuota de mantenimiento que impuso la HSJHOA sobre las áreas compartidas y su recobro retroactivo al cabo de más de diez (10) años.

Expone como segundo y tercer error la falta de parte indispensable. Arguye que, la comparecencia de la HSJHOA -en ausencia de todos los titulares del complejo residencial- es insuficiente ante una causa de acción que intenta desmantelar la administración de la HSJHOA. Añade que, la composición de la HSJHOA y de su Junta de Directores constan en la Escritura Matriz de Servidumbre en Equidad, por lo cual, el Consejo no posee competencia sobre dicho asunto.

Fundamentado en lo anterior, la HSJHOA solicita que expidamos el auto de *certiorari,* dejemos sin efecto el dictamen interlocutorio recurrido y ordenemos la desestimación de la presente causa de acción por falta de parte indispensable y por falta de legitimación activa.

En su alegato en oposición, el Consejo reafirma su capacidad para instar la *Demanda* de epígrafe -a nombre de los titulares del Condominio- lo cual fundamenta en que son asuntos relacionados

al mantenimiento y a la administración del régimen que impactan el Condominio y sus titulares. Discute, además, que el hecho de que la composición de la Junta de Directores de la HSJHOA surja de la Escritura Matriz, no implica que es una condición restrictiva inscrita en el Registro de la Propiedad. A su entender, este hecho no impide que el TPI evalúe la solicitud del Consejo dirigida a invalidar o eliminar la composición de la Junta de Directores, ni es motivo para dictaminar que los "miles" de titulares de las propiedades que pertenecen al complejo residencial Hacienda San José son parte indispensable en este proceso. Sobre tales bases argumenta que, no aplican las doctrinas de falta de legitimación activa y falta de parte indispensable que invoca la HSJHOA.

Luego de justipreciar que, en el presente caso, se reúnen los criterios esbozados en la Regla 40 de nuestro Reglamento, *supra,* que justifican nuestra intervención sobre este asunto, nos corresponde revisar *de novo* la *Solicitud de desestimación por falta de legitimación activa y de parte indispensable* que instó la HSJHOA -acogida por el foro primario como un petitorio sumario-,[7] junto a la *Oposición a que se dicte sentencia sumaria a favor de la parte demandada HSJ* que presentó el Consejo y sus respectivos anejos, tal cual nos lo exige la normativa de *Meléndez González et al. v. M. Cuebas,* supra. Cumplido lo anterior, estaremos en posición de dictaminar si el foro primario abusó de su discreción e incurrió en error manifiesto al denegar la moción dispositiva de la peticionaria.

Tras constatar que el Consejo obedeció las formalidades que establece la Regla 36.3(b) de las Reglas de Procedimiento Civil, *supra,* al oponerse al petitorio de la HSJHOA, observamos que identificó varios asuntos que, a su entender, están en controversia

---

[7] En *Torres Ponce v. Jiménez,* 113 DPR 58 (1982), el Alto Foro resolvió que, el efecto de añadir prueba a una moción de desestimación es que dicha solicitud será considerada como un petitorio sumario. Véase, además, Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,* 6ta ed. 2017, sec. 2606, a la pág. 309.

en su intento por justificar la denegatoria de la moción dispositiva pendiente de adjudicación.

Realizado nuestro análisis sosegado *de novo* de la moción dispositiva y de su oposición, coincidimos con el foro primario en que ostenta jurisdicción y en que persisten controversias de hechos esenciales que imposibilitaron la solución sumaria de la presente causa. En virtud de la facultad que nos confiere la Regla 40 de nuestro Reglamento, *supra,* ejerceremos nuestra facultad revisora sobre la presente causa.

De la *Resolución* recurrida se desprende que, el foro primario constató –mediante la *Convocatoria Asamblea Ordinaria* del Condominio, celebrada el 14 de julio de 2021, y el *Acta* correspondiente- que la tramitación de este pleito judicial por parte del Consejo fue objeto de discusión durante la referida asamblea. Mediante su escrito en oposición al petitorio sumario y las cartas que constituyen los Anejos A, B y C, el Consejo presentó los acuerdos alcanzados entre el Consejo de Titulares y la Junta de Directores de la HSJHOA sobre varios asuntos relacionados a gastos de mantenimiento del Condominio.

Cumplidos los criterios que establece la doctrina de la legitimación activa antes esbozados, y a tenor de la capacidad para instar acciones en los foros judiciales que le confiere el Artículo 49 de la Ley Núm. 129-2020, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1922u, el Consejo ostenta legitimación activa para instar la presente causa, en representación de los titulares del Condominio, quienes aseguran ser acreedores de los remedios alegados en la *Demanda.*

Sobre la alegada falta de parte indispensable que invocó la HSJHOA, cabe reiterar que, según expusimos previamente, esta defensa es irrenunciable y puede ser invocada en cualquier etapa de los procesos. Lo antes, en la medida en que, el efecto de excluir a

una parte indispensable de la adjudicación de una controversia que podría afectar sus derechos redunda en una violación a su debido proceso de ley.

De conformidad, el TPI correctamente analizó que la HSJHOA "tiene la capacidad para representar a todos los titulares de la urbanización",[8] ante el reclamo del Consejo que impugna ciertas cláusulas de la Escritura Matriz. Dictaminó además que, la composición de la Junta de Directores de la HSJHOA no es un derecho real. Puntualizó que, en su día, el Consejo deberá demostrar la procedencia de la nulidad de las disposiciones reglamentarias que pretende.

Según decretó el foro primario, si el Consejo lograse establecer los méritos de su reclamo, y lo antes incidiera sobre los derechos reales de los titulares del complejo de viviendas Hacienda San José, el foro *a quo* evaluará si la Junta de Directores de la HSJHOA representa o no los intereses de cada titular, en cuyo caso, también determinará si estos últimos deben añadirse al litigio. Tales expresiones del foro primario no sustentan la interpretación de la peticionaria de que el TPI pospuso la adjudicación del planteamiento sobre falta de parte indispensable. Más bien, el TPI adjudicó este asunto a favor del Consejo.

Efectuada nuestra evaluación *de novo* de los hechos incontrovertidos que consignó el TPI y tras justipreciar la totalidad del expediente ante esta Curia, coincidimos con el foro recurrido en que existen hechos medulares en controversia que impiden la solución sumaria de este asunto. Fundamentado en lo anterior, procedía ordenar la celebración de un juicio en su fondo para dilucidar tales controversias.

---

[8] Véase, la *Resolución* recurrida, pág. 16.

Por los fundamentos antes expuestos y, conforme nos autoriza la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* concluimos que el foro primario no incidió al denegar la moción dispositiva que instó la HSJHOA. A esos efectos, dispuso que el Consejo tiene legitimación activa para presentar la causa de epígrafe, a nombre de los titulares del Condominio. Resolvió, además, que la HSJHOA tiene capacidad para representar a los titulares del complejo residencial Hacienda San José, por lo cual, en esta etapa de los procesos, no se configura la falta de parte indispensable. Los errores señalados no se cometieron.

**IV.**

Por todo lo antes, expedimos el auto de *certiorari* y confirmamos la *Resolución* interlocutoria recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones